IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICIA COTNER,

    Plaintiff,                                  No. 2:09-cv-02657 KJN (TEMP)

    v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.                          <u>ORDER</u>

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  (Dkt. No. 19.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 20.)  For the reasons that follow, the court grants plaintiff's motion for summary judgment or remand, denies the Commissioner's cross-motion for summary judgment, and remands the case under sentence four of 42 U.S.C. § 405(g) for further proceedings.

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 7, 10.)

1

## I. BACKGROUND[2]

Plaintiff was 42 years old on the alleged disability onset date,[3] and was 54 years old on the date that the ALJ entered his decision denying plaintiff's application. (See Administrative Transcript ("AT") 44.) Plaintiff attended high school through the twelfth grade. (AT 44.) Plaintiff previously worked as a pizza parlor supervisor and cashier. (AT 43.) Plaintiff alleges she is disabled due to surgery on her right shoulder and a herniated disc in her neck. (AT 193.)

### A. Procedural Background

In a decision dated July 23, 2003, the ALJ denied plaintiff's application. (AT 93-104.) The Appeals Council remanded the case for a new decision. (AT 141-42.) A second hearing was held before ALJ William Thompson on November 29, 2005.[4] (AT 81-90.) In a decision dated September 16, 2006, the ALJ again denied plaintiff's application. (AT 23-45.) As discussed below, the ALJ determined that plaintiff was able to perform jobs that existed in significant numbers in the national economy and that plaintiff has not been under a disability at any time through December 31, 1996, and at any time from August 8, 2001, through the date of the ALJ's decision. (AT 44.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. (AT 11-14.)

Plaintiff subsequently filed this action. Plaintiff contends the ALJ failed to

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed only insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff alleged an onset date of January 15, 1995 but the ALJ regarded the alleged onset date as October 14, 1994, the date of the injury to plaintiff's shoulder. (AT 27, 193.)

[4] A hearing was also held on January 7, 2003 ,at which plaintiff and a vocational expert testified. (AT 52-80.)

properly evaluate and credit the medical evidence, improperly discredited plaintiff,[5] and relied on an incomplete hypothetical posed to the vocational expert in finding plaintiff not disabled. Plaintiff's contention that the ALJ improperly disregarded record medical opinions is dispositive and requires remand of this action for further proceedings.

B. Summary of the ALJ's Findings

The ALJ conducted the required five-step, sequential evaluation and concluded that plaintiff was not disabled within the meaning of the Act.[6] At step one, the ALJ concluded

---

[5] Because a new finding on plaintiff's credibility will be made by the ALJ on remand, the court will not address plaintiff's arguments in this regard. However, the court notes that contrary to the ALJ's credibility finding, the record contains several instances of plaintiff attempting modalities of treatment other than surgical intervention. AT 32, 40 (ALJ's credibility findings); 221 (Vicodin and Soma); 404, 568-69, 1452 (physical therapy); 379-80, 1318 (epidural blocks); 406 (TENS unit); 1551 (acupuncture); 1455 (trigger point injections). In addition, in order to discredit plaintiff's subjective complaints on the basis of activities of daily living, those activities must be transferable to the "more grueling environment of the workplace," including the ability to perform work on a sustained basis for eight hours a day, five days a week. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); SSR 96-8p (residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis which means 8 hours a day, for 5 days a week, or an equivalent work schedule).

[6] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically

3

1   that plaintiff had not engaged in substantial gainful activity since October 14, 1994, the alleged
2   date of onset. (AT 43.) At step two, the ALJ concluded that, prior to December 31, 1996,[7]
3   plaintiff had the "severe" impairments of "degenerative disc disease of the cervical spine and
4   status post right shoulder surgery" and that as of August 1, 2001,[8] plaintiff had the "severe"
5   impairments of "degenerative disc disease of the cervical spine, status post decompression and
6   fusion at C5-6 and C6-7, and status post right shoulder surgery." (AT 27, 43.) At step three, the
7   ALJ found that plaintiff's did not have an impairment or combination of impairments that met or
8   medically equaled any impairment listed in the applicable regulations at any time during the
9   relevant time periods. The ALJ specifically addressed whether plaintiff meets or medically
10  equals Listings 1.02 or 1.04  (AT 27-28, 36-37.)

The ALJ next assessed plaintiff's residual functional capacity ("RFC"). The ALJ found that:

> The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work, except: she can lift and carry up to twenty pounds occasionally and ten pounds frequently; she can stand/walk up to six hours in an eight-hour workday; she cannot climb ropes or scaffolding; she cannot perform overhead reaching; she must avoid unprotected heights and vibrations.

---

> determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

[7] This was the date plaintiff was last insured for purposes of plaintiff's Title II application. (AT 27.) See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (Title II claimant must demonstrate disability occurred prior to expiration of insured status).

[8] Plaintiff's Title XVI application date was August 8, 2001; SSI benefits are not retroactively available. (AT 35.) See 20 C.F.R. § 416.501 (regardless of alleged onset date, Title XVI benefits not payable until time of application).

4

1  (AT 33,41.)[9]  In making such a finding, the ALJ gave little weight to plaintiff's testimony
2  regarding her physical limitations as to the period at issue for DIB and found plaintiff not
3  credible as to the period at issue for SSI.  (AT 32, 40.)
4        At step four, the ALJ found that plaintiff can perform her past relevant work as a
5  pizza parlor supervisor and cashier.  (AT 33, 42.)  In the alternative, at step five, relying on the
6  testimony of a vocational expert, the ALJ found plaintiff could perform work as a fast food
7  worker, cashier, and parking lot attendant, and that these jobs exist in significant numbers in the
8  national economy.  (AT 34, 42-43.)  Accordingly, the ALJ found plaintiff had not been under a
9  disability from October 14, 1994, through December 31 1996 (the period at issue for DIB), or for
10 the period from August 28, 2001, through September 16, 2006, the date of the ALJ's decision
11 (the period at issue for SSI).  (AT 34-35, 43-44.)
12 II.    STANDARDS OF REVIEW
13       The court reviews the Commissioner's decision to determine whether it is: (1) free
14 of legal error; and (2) supported by substantial evidence in the record as a whole.  Bruce v.
15 Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th
16 Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.
17 Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means
18 more than a mere scintilla but less than a preponderance; it is such relevant evidence as a
19 reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.
20 Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

---

[9] 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

5

1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

III. ANALYSIS

    A. Medical Evidence

Plaintiff asserts three errors with regard to the ALJ's discussion of the record medical evidence. First, plaintiff contends that at step two, the ALJ improperly assessed the severity of her medical impairments. Second, plaintiff contends the ALJ committed error at step three by improperly discrediting the opinion of a treating physician that plaintiff met a Listing. Third, plaintiff contends the ALJ committed error at step four in assessing plaintiff's residual functional capacity by ignoring record medical opinions that assessed plaintiff with a lesser capacity than the one assessed by the ALJ.

        1. Severity of Impairments

Plaintiff contends the ALJ committed error at step two in the DIB analysis by

1  finding that plaintiff's only severe impairment was status post right shoulder surgery.[10]  Plaintiff
2  contends the ALJ should also have found severe impairments of osteoarthritis of the
3  acromioclavicular joint, subacromial bursitis, impingement syndrome, degenerative disc disease
4  with narrowing, central herniated discs, and broad herniated disc causing cervical radicular
5  mechanical pain and abnormalities affecting the C6 roots.  An impairment is not severe only if it
6  "would have no more than a minimal effect on an individual's ability to work, even if the
7  individual's age, education, or work experience were specifically considered."  SSR[11] 85-28.
8  The purpose of step two is to identify claimants whose medical impairment is so slight that it is
9  unlikely they would be disabled even if age, education, and experience were taken into account.
10 Bowen v. Yuckert, 482 U.S. 137 (1987).  "The step-two inquiry is a de minimis screening device
11 to dispose of groundless claims."  Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996).

         Because the ALJ found plaintiff has severe impairments at step two of the
sequential analysis and proceeded through the sequential analysis to step five, the court finds no
basis for reversal in the findings made at step two.  Moreover, the court notes that several of the
examining and consulting physicians were afforded an opportunity to review plaintiff's medical
records and their assessments of plaintiff's residual functional capacity encompassed limitations
due to all of plaintiff's impairments, whether characterized as "severe" or not.  See, e.g. AT 629-
36 (November 8, 2001 orthopedic consultation by examining orthopedist Dr. Miller, noted

---

[10] There is a discrepancy between the findings in the body of the decision and the summary of findings.  (AT 27 (for period at issue for DIB, in the discussion section of the decision, the ALJ found that in addition to severe impairment of status post right shoulder surgery, plaintiff also had impairment of degenerative disc disease of the cervical spine); cf. AT 43 (ALJ in summary of findings, found plaintiff only had severe impairment of status post right shoulder surgery).)

[11] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35(b)(1).  Social Security Rulings are "binding on all components of the Social Security Administration."  Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

plaintiff was status postoperative right distal clavicle resection and revision of previous anterior acromioplasty and rotator cuff repair of the right shoulder with lysis of adhesions for adhesive capsulitis with persistent impingement syndrome and adhesive capsulitis . . . status postoperative anterior cervical disc fusion at C4-C5 and C5-C6 with right radiculopathy at C3-C4 . . . postoperative bilateral carpal tunnel releases); AT 533-45 (March 7, 1997 qualified medical examination by orthopedic surgeon Dr. Kucera noted impairments to cervical spine, right shoulder, left lower extremity); AT 552-56 (December 17, 1996 assessment by treating physician Dr. Amsden noted cervical, right shoulder, and upper extremity impairments).  Under these circumstances, the failure to characterize some of plaintiff's impairments as severe is not a basis for reversal of the ALJ's decision.

### 2. Listing 12.04

Plaintiff further contends that she meets the requirements of Listing 1.04A[12] and should therefore be considered presumptively disabled.  The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim.  To equal a listed impairment, a claimant must establish that she has symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's

---

[12] In the heading of the section discussing the step three analysis in plaintiff's brief, plaintiff refers to Listing 1.04A yet in the body of the text, plaintiff refers to Listing 1.04B, which pertains to spinal arachnoiditis.  The opinion at issue, that of Dr. Senegor (AT 1557), relates to Listing 1.04A and so the court presumes plaintiff's reference to 1.04B is a typographical error.

8

impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526.  A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3).

Impairments of the musculoskeletal system are considered in Part 1 of the Listings.  Listing 1.04 addresses disorders of the spine.  Listing 1.04A requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscles weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Dr. Senegor opined in November 2005, that plaintiff meets or equals Listing 1.04A.  (AT 1438, 1557.)  Therefore, plaintiff contends that this opinion establishes that she meets Listing 1.04A.  Reviewing the record as a whole, the court cannot find plaintiff has met her burden at step three.  First, it is not apparent from Dr. Senegor's Listing opinion that it was intended as a retrospective opinion regarding the earlier period at issue for DIB.  There is no indication as to the date plaintiff began to meet or equal the Listing; all that Dr. Senegor indicates is that plaintiff "has" suffered from a disorder of the spine.  Moreover, the ALJ discussed medical evidence which is contrary to a finding that plaintiff  meets all the requirements of this listing. (AT 41.)  For instance, consultative examiner Dr. Kucera noted that plaintiff had a non-anatomical distribution of symptoms. (AT 293.)  See Key v. Heckler, 754 F.2d at 1550; 20 C.F.R. § 404.1525(d) (impairment must have findings listing in Appendix 1).  Numerous medical providers, including Dr. Senegor, also found plaintiff had full motor strength, normal sensation, and normal reflexes. (AT 467 (Dr. England in January 1999 found normal sensation in upper extremities); AT 1294 (Dr. Aboughannam's findings in September 2004 showed full normal motor strength, normal sensation and normal reflexes); AT 1324 (Dr. Senegor's findings in January 2003, were normal); 1444 (Dr. Senegor's findings in November 2002, were normal, no signs of atrophy); 1554 (Dr. Emery in December 2003, found full motor strength and normal

reflexes). Finally, in November 1996, Dr. Gregorius found no evidence of nerve root compression, a finding which is seminal to Listing 1.04A. AT 557. Accordingly, there was no error in the ALJ's finding that plaintiff does not meet Listing 1.04A.

### 3. Record Medical Opinions

Plaintiff also contends that the ALJ improperly disregarded the opinion of her treating physicians and other record medical opinions. Plaintiff's contention in this regard is persuasive. The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester, 81 F.3d at 830. Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id. If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." Magallanes, 881 F.2d at 750; see also Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (affirming where the ALJ carefully detailed arguably conflicting clinical evidence and provided reasons for crediting one treating physician's opinion over another treating physician's opinion).

In light of the remand of this matter by the Appeals Council after the first decision of the ALJ, the apparent disregard of certain record medical opinions completely undermines the finding that plaintiff could perform light work with certain restrictions.[13]  (AT 43-44.)  Defendant offers several bases, allegedly grounded in the record, in support of the contention that the ALJ committed no error in this regard.  This court reviews the adequacy of the reasons specified by the ALJ, not the post hoc rationalizations of the agency.  See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court is constrained to review the reasons the ALJ asserts).

In the first opinion issued by ALJ Thompson, the opinions of Dr. Miller and the state agency physicians, all of whom limited plaintiff to occasional lifting of ten pounds, were rejected.  (AT 100, 629-36 (November 2001 opinion of Dr. Miller limited plaintiff to occasionally lifting ten pounds); AT 642-49 (state agency opinions in November 2001, affirmed January 2002, limited plaintiff to occasionally lifting ten pounds.)  The Appeals Council remanded this matter with specific instructions that the ALJ should further evaluate the record medical opinions which assessed plaintiff's residual functional capacity for occasional lifting to be under twenty pounds, including the opinion of Dr. Senegor.  (AT 141 (appeals council remand); AT 1432, 1442, 1456 (Dr. Senegor's opinions in August 2003, March 2004, and September 2004, limited plaintiff's lifting to ten pounds) .)  Notably absent from the ALJ's second decision, the decision at issue here, is any discussion of the state agency opinions or that of Dr. Miller.  (AT 32-33, 41.)  With respect to Dr. Senegor's opinion, the ALJ did not even address the ten pound limitation, despite the explicit command of the Appeals Council to do so.

---

[13] The court notes a certain carelessness in the drafting of the ALJ's decision, a circumstance which calls into question whether proper attention was given by the ALJ to the entirety of the record, albeit lengthy, as a whole.  See, e.g. AT 28, 37 (ALJ stated no medical expert found plaintiff's impairments are equivalent in medical severity to listed impairment); cf. AT 1557 (Dr. Senegor found plaintiff met or equaled Listing 1.04A); AT 28 (discussion of Dr. Watson's findings in 1995); cf. AT 31-32 (ALJ repeatedly misstates dates of treatment with Dr. Watson as occurring in year 2005).

1  (AT 33, 41.)  This omission is particularly troubling in that numerous other physicians, who
2  assessed plaintiff's functional limitations from the date of her shoulder injury to dates close in
3  time to the date plaintiff was last insured for DIB, also assessed plaintiff with a sedentary
4  residual functional capacity.  (AT 349 (April 1995, Dr. Watson limited plaintiff to lifting no
5  more than five pounds); AT 342 (May 1995, Dr. Watson limited plaintiff to "extremely light duty
6  work"); AT 318 (August 1995, Dr. Watson limited plaintiff to lifting ten pounds); AT 555 (Dr.
7  Amsden in December 1996, released plaintiff to sedentary work); AT 293 (Dr. Kucera in March
8  1997, opined plaintiff could perform "more than sedentary" work, but did not indicate whether
9  plaintiff could perform "light" work).)

10         Moreover, the ALJ appears to have ignored the sequencing of plaintiff's surgical
11  history.  Although plaintiff was showing some improvement after her initial surgery on March
12  20, 1995 (AT 610-12), she underwent another surgery in January 1996, which is indicative of a
13  worsening condition.  (AT 574 (In November 1995, Dr. Williams noted plaintiff had been
14  experiencing worsening symptomology since prior surgery); AT 390-91 (Dr. Williams performed
15  right distal clavicle resections, revision of previous anterior acromioplasty, rotator cuff repair
16  right shoulder with lysis of adhesions.)  The opinion of examining internal medicine specialist
17  Dr. Aboughannam in September 2004, that plaintiff could perform light work, was offered
18  almost eight years after plaintiff's last date insured and after plaintiff underwent a third surgery in
19  February 1998, and a fourth surgery in January 2003.  (AT 1291-95 (comprehensive internal
20  medicine evaluation by Dr. Aboughannam); AT 490-92 (Dr. Gregorius performed C5-6 and C6-7
21  anterior sural discectomy and fusion); AT 1425-27 (Dr. Senegor performed anterior cervical
22  diskectomy and fusion C4-5 with cadaver bone graft and an anterior SpineTech plate).)  Because
23  plaintiff's date of injury was October 14, 1994, in light of the various medical opinions which
24  limited plaintiff to sedentary or less than sedentary capacity during the relevant time period and
25  the timing of plaintiff's surgeries, it appears the ALJ failed to consider whether plaintiff, at a
26  minimum, was disabled for at least a twelve-month period during the relevant time.  The matter

1 will therefore be remanded so that all record medical opinions can be considered and discussed in
2 the ALJ's decision and further evaluation can be made of whether plaintiff is entitled to a closed
3 period of disability benefits.

      B.   Vocational Expert Testimony

          Finally, plaintiff contends that the ALJ failed to include all of plaintiff's limitations in the hypotheticals relied on by the ALJ in finding that there were a significant number of jobs which plaintiff can perform. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all of the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

          As discussed above, it does not appear that the ALJ considered all of the medical record evidence in assessing plaintiff's residual functional capacity. In concluding plaintiff was not disabled in either of the relevant time periods, the ALJ relied on testimony elicited in response to hypotheticals which included a residual functional capacity to perform light work and limited to no overhead reaching. (AT 76-77, 83-84.) The court cannot find that substantial evidence supports the ultimate finding of disability in light of the ALJ's disregard of the record medical opinions assessing a sedentary or less than sedentary residual functional capacity.[14]

---

[14] The hypotheticals included no overhead reaching. (AT 77, 84.) Dr. Miller opined plaintiff was restricted in reaching in all directions. (AT 636.) Dr. England opined that plaintiff is precluded from work at or above shoulder level on the right shoulder. (AT 471.) Dr. Kucera opined that plaintiff was precluded from repetitive or prolonged use of the right arm at or above shoulder level. (AT 543.) The state agency physicians opined that plaintiff was limited in

IV.    CONCLUSION

The ultimate question is whether to remand this case to the ALJ or to order the payment of benefits. "The decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful purpose would be served by further administrative proceedings or where the record has been thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1987).

Here, the ALJ relied on the vocational expert testimony that plaintiff could perform certain jobs that required the performance of work with a light residual functional capacity. Because the ALJ does not appear to have considered the entire record in formulating the residual functional capacity which formed the basis of the hypothetical posed to the vocational expert, further proceedings are warranted[15] and further testimony from a vocational expert must be taken. In addition, the ALJ should further develop the record by consulting a medical expert to determine whether plaintiff is entitled to disability benefits for a closed period.

/////
/////
/////

---

reaching in all directions. (AT 645.) On remand, if the ALJ finds plaintiff is less restricted in that she is precluded from overhead reaching, but can perform work requiring reaching at shoulder level, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for rejecting the opinions cited above.

[15]  Under Medical-Vocational Rules 201.21 and 201.22, if plaintiff had a residual functional capacity to perform sedentary work, a finding of "not disabled" would be warranted for the DIB period if plaintiff did not have nonexertional limitations. However, because plaintiff does have nonexertional limitations, vocational expert testimony must be taken in this regard. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985) (ALJ may apply grids in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations).

14

For the foregoing reasons, this matter will be remanded[16] under sentence four of 42 U.S.C. § 405(g) for further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand (Dkt. No. 19) is granted;

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 20) is denied;

3. This matter is remanded for further proceedings consistent with this order. On remand, another ALJ shall be assigned; and

4. The Clerk of Court enter judgment in favor of plaintiff.

IT IS SO ORDERED.

DATED: March 11, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cotner.ss.rem

---

[16] Internal policy of the Social Security Administration provides that on remand from the Appeals Council, including remands generated by the court, the proceedings are held before the previously assigned ALJ, unless the case previously was assigned to that ALJ on a prior remand and the ALJ's decision after remand is the subject of the new remand or the Appeals Council or court expressly directs the case be assigned to a different ALJ. HALLEX I-2-155(D)(11). The court recognizes that this provision is a purely internal procedural guidance and is not binding. See Moore v. Apfel, 216 F.3d 864 (9th Cir. 2000). However, as this matter was previously remanded by the Appeals Council and ALJ Thompson has now presided over two hearings on these disability applications, the court deems it appropriate to have another ALJ assigned to this matter.